UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| EFD SPORTS, LLC | § | |
| | § | |
| v. | § | CIVIL NO. 4:24-CV-87-SDJ |
| | § | |
| BALLY'S CORPORATION | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff EFD Sports, LLC's Motion for Leave to File Plaintiff's Second Amended Complaint, (Dkt. #18), and Motion for Leave to File Plaintiff's Third Amendment Complaint, (Dkt. #28).[1] Both motions have been fully briefed. (Dkt. #25, 26, 29, 30). After full consideration, the Court **DENIES as moot** Plaintiff's motion for leave to file its Second Amended Complaint and **DENIES** Plaintiff's motion for leave to file its Third Amended Complaint.

### I. BACKGROUND

Plaintiff EFD Sports, LLC ("EFD Sports") is a Texas limited liability company that developed and owns technology known as "StrikeTec," which is used in boxing and mixed martial arts to analyze "strikes." (Dkt. #10 ¶¶ 3.1–3.2). The technology is utilized in training, and to provide real-time punching statistics for broadcasted matches. (Dkt. #10 ¶ 3.2). Defendant Bally's Corporation ("Bally's"), a Delaware corporation, was interested in buying StrikeTec "for the purpose of integrating the

---

[1] EFD Sports also filed a Supplemental Motion for Leave to File Plaintiff's Third Amended Complaint, (Dkt. #56). Because EFD Sports did not seek leave of the Court to file a supplemental motion, the Court does not consider this filing.

1

technology and devices" into their existing system for sports betting. (Dkt. #10 ¶¶ 1.2, 3.5, 3.12). The joint project would entail development of a commercial product from the existing StrikeTec platform, which would take StrikeTec off the market until the project was completed. (Dkt. #10 ¶ 3.12). EFD Sports alleges that it entered into, and began performance on, a contract with Bally's to develop this commercial product. (Dkt. #10 ¶¶ 4.2–4.3). Bally's allegedly failed to pay for EFD Sports's performance and then terminated the project. (Dkt. #10 ¶¶ 4.5–4.6).

Thereafter, EFD Sports brought this action against Bally's in a Texas state court in Denton County, Texas. (Dkt. #1). Pursuant to 28 U.S.C. §§ 1332(a), 1441(a), and 1446, Bally's removed the action to this Court because complete diversity exists between the parties. (Dkt. #1). The Court ordered the parties to replead in compliance with the Federal Rules of Civil Procedure and the Court's Local Rules. (Dkt. #6). EFD Sports then filed its First Amended Complaint ("FAC"), (Dkt. #10), and Bally's filed a motion to dismiss, (Dkt. #12). However, before a scheduling order was issued, and without leave, EFD Sports filed its Second Amended Complaint ("SAC"). (Dkt. #14). The Court struck this complaint without prejudice for failure to comply with Federal Rule of Civil Procedure 15(a)(2). (Dkt. #17). EFD Sports then filed its Motion for Leave to File Plaintiff's Second Amended Complaint. (Dkt. #18); *see also* (Dkt. #19) (refiling SAC). Bally's responded, (Dkt. #25), and EFD Sports replied, (Dkt. #26). Before the Court ruled on that motion, EFD Sports filed its Motion for Leave to File Plaintiff's Third Amended Complaint, (Dkt. #28). Bally's responded, (Dkt. #29), and EFD Sports replied, (Dkt. #30).

In all three amended complaints, EFD Sports asserts claims against Bally's for breach of contract, quantum meruit, negligent representation, and fraud. (Dkt. #10 ¶¶ 4.1–4.21); (Dkt. #19 ¶¶ 4.1–4.23); (Dkt. #28 ¶¶ 4.1–4.25). However, in the Third Amended Complaint, ("TAC"), EFD Sports introduces new factual allegations and adds Sina Miri, Sam Miri, and Adi Dhandhania (together, the "Individual Defendants") as defendants to the case, claiming additional causes of action against them for tortious interference with contract and conspiracy "not to abide by the Agreements made the subject of the breach of contract action." (Dkt. #28 ¶¶ 4.1–5.20). EFD Sports alleges that the Individual Defendants were all involved in negotiating the agreement between EFD Sports and Bally's.

## A. The First Amended Complaint

According to the FAC, in early 2021 Soo Kim ("Kim"), CIO of Standard General, L.P., the largest shareholder for Bally's, sought out Wes Elliot ("Elliot"), the owner of EFD Sports, to inquire about StrikeTec on behalf of Bally's. (Dkt. #10 ¶¶ 3.1–3.4). These communications occurred via LinkedIn. (Dkt. #10 ¶ 3.4). Several months later, Elliot was introduced to Bally's team lead, Adi Dhandhania ("Dhandhania"). (Dkt. #10 ¶ 3.6). Elliot then traveled to California to work on a proof of concept for the commercial product, and to negotiate a deal with Kim and Dhandhania. (Dkt. #10 ¶¶ 3.11–3.12). As part of these negotiations, Elliot provided Kim and Dhandhania with a scope of work and proposed budget, which Kim accepted. (Dkt. #10 ¶¶ 3.12–3.15). Thereafter, Kim communicated with Elliot and EFD Sports regarding

3

the project's timeline, marketing assistance, budgeting, and the parties' intentions. (Dkt. #10 ¶¶ 3.16–3.22).

Several months after the initial discussions, Elliot, Kim, and Sina Miri ("Sina"), a member of Dhandhania's innovation team, met on Zoom. (Dkt. #10 ¶ 3.20). During this call, EFD Sports alleges that Kim made additional representations regarding the project. (Dkt. #10 ¶ 3.21). The only other communication EFD Sports alleges occurred on that Zoom call was a request by Sina for additional testing, which Kim rejected. (Dkt. #10 ¶ 3.21). After the call, Elliot circulated a second scope of work, which broke the project down into newly revised phases. (Dkt. #10 ¶ 3.22).

Approximately one month later, Sina presented a licensing agreement to EFD Sports that differed substantially from the previous agreements made with Kim. (Dkt. #10 ¶ 3.23). Dhandhania expressed concerns about the licensing agreement and argued that the language should be consistent with the original agreement. (Dkt. #10 ¶ 3.24). Later that same month, Dhandhania, Sina, Elliot, and an attorney for EFD Sports met over Zoom to discuss changes to the licensing agreement. (Dkt. #10 ¶ 3.25). Bally's asked the attorney to modify the licensing agreement, to "revert back to the original intent of the agreed upon" scope of the project. (Dkt. #10 ¶ 3.25). Later that week, EFD Sports sent a revised draft of the licensing agreement to Dhandhania and Sina; Sina informed him that the team was traveling overseas, and that his brother, Sam Miri ("Sam"), would be assigned as the new team manager for the project. (Dkt. #10 ¶ 3.26).

4

About six weeks later, Sam called Elliot to inform him that Bally's would not be moving forward with the project, due to the disagreement about the terms of the licensing agreement, but that he would "report with the team about payment for work completed." (Dkt. #10 ¶ 3.27). Following this communication, Kim emailed Elliot to confirm that Bally's was pulling out of the project. (Dkt. #10 ¶ 3.29).

## B. The Second Amended Complaint

The SAC adds allegations regarding communications between EFD Sports and Bally's personnel about the terms of the alleged agreement. These primarily consist of communications between Kim and Elliott. (Dkt. #19 ¶ 3.14, 3.16, 3.17, 3.18, 3.20). The SAC also adds allegations regarding the involvement of the Individual Defendants, including a suggestion that Sam Miri "held a grudge because he was not hired by Wes Elliot" at EFD Sports. (Dkt. #19 ¶ 3.30). Further, the SAC attaches five exhibits not included in either the original complaint or the FAC. (Dkt. #19 at 18–50).

## C. The Third Amended Complaint

The factual allegations added in the TAC mostly relate to communications between EFD Sports and the Individual Defendants. EFD Sports alleges that the Individual Defendants "did not oppose" Soo Kim's representations, and that they "participated in" the communications with EFD Sports. (Dkt. #28 ¶¶ 3.15, 4.19). EFD Sports further alleges that Sina confirmed Kim's budget, and that Dhandhania circulated his confirmation. (Dkt. #28 ¶ 3.26). And EFD Sports contends that it was

5

Dhandhania who wanted to "revert back to the original intent of the agreed upon" scope of work, and that he asked EFD Sports's attorney to change the licensing agreement. (Dkt. #28 ¶¶ 3.28–3.30). EFD Sports also asserts that it was Bally's who "refused to change the terms of the proposed license to reflect the agreement of the parties," rather than any of the Individual Defendants. (Dkt. #28 ¶ 3.30). The TAC further alleges that Sina asked Dhandhania if he could inform Elliott that Bally's had decided not to pursue the relationship, but Dhandhania instructed him not to end the relationship until they had "a solution that is real and workable." (Dkt. #28 ¶ 3.33).

The TAC also adds several new allegations specific to Sam. It states that Sam was copied on emails and received drafts of the licensing agreement, (Dkt. #28 ¶ 3.31), and that he requested that Bally's attorneys draft a licensing agreement that EFD Sports would not accept. (Dkt. #28 ¶ 5.5). Allegedly, in November of 2021, he tried to call Elliot to "get access to his engineering team" but was denied. (Dkt. #28 ¶ 3.37). EFD Sports further alleges that Sina introduced Sam to Elliot in July, as Sam was pursuing employment with EFD Sports, but that EFD Sports rejected him. (Dkt. #28 ¶ 3.18). Subsequently, Sam completed a negative assessment of Elliot, giving the perception that he was unqualified, but then confirmed that the project could be turned around in six months. (Dkt. #28 ¶ 3.19). Sam was then purportedly hired by Bally's as an engineer to develop the StrikeTec project. (Dkt. #28 ¶ 3.20). EFD Sports alleges that Sam led the effort to interfere with the contract after being rejected for a job by EFD Sports. (Dkt. #28 ¶ 4.23).

The most notable amendment in the TAC is the added allegation that it was the Individual Defendants who decided to terminate the deal once Bally's realized it would not get full control over the commercial product. (Dkt. #28 ¶ 3.41). The Individual Defendants therefore tortiously interfered with the contract and conspired to gain control over the project. (Dkt. #28 ¶¶ 5.1–5.20). In response, Bally's argues that the motion for leave to amend is futile, and that the newly added Individual Defendants are not subject to this Court's jurisdiction. (Dkt. #29).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) allows parties to amend pleadings, including complaints, and requires courts to "freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). The "language of this rule evinces a bias in favor of granting leave to amend," but leave to amend is not automatic. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005)). It is within the district court's discretion to grant or deny a motion to amend, and in doing so, the court may consider a variety of factors, including undue delay, bad faith, dilatory motive, repeat failures to cure deficiencies, undue prejudice, and futility of the amendment. *Id.* For futility, if an amended complaint "would be subject to dismissal, then amendment is futile and the district court [is] within its discretion to deny leave to amend." *Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 391 (5th Cir. 2023) (quoting *Ariyan, Inc. v. Sewage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022)).

## III. DISCUSSION

EFD Sports has two motions for leave to file an amended complaint pending before the Court. Because Bally's has not agreed to its amendment, EFD Sports requires the Court's leave to amend. See FED. R. CIV. P. 15(a). The Court addresses each motion in turn.

### A. The Motion for Leave to File Plaintiff's Second Amended Complaint

EFD Sports filed its Motion for Leave to File Plaintiff's Third Amended Complaint, (Dkt. #28), while its Motion for Leave to File Plaintiff's Second Amended Complaint, (Dkt. #18), was still pending before the Court. When a plaintiff seeks leave to amend his complaint and subsequently files a second motion seeking leave to amend his complaint before the court rules on the first motion, the later amended complaint supersedes the first. *See, e.g.*, *Kromenhoek v. Cowpet Bay W. Condo. Ass'n*, No. CV 2012-25, 2014 WL 12975383, *3 (D.V.I. Dec. 12, 2014)("it would seem prudent to treat the second amended complaint as superseding the first, and to find as moot the first motion to amend"); *Jenkins-Dyer v. Wood*, 13-CV-2489-JAR, 2014 WL 4261279 (D. Kan. Aug. 29, 2014); *Douglas v. Cadence Bancorp*, L.L.C., 4:12-CV-03571, 2013 WL 3929072 (S.D. Tex. July 29, 2013).

Therefore, the Court denies EFD Sports's Motion for Leave to File Plaintiff's Second Amended Complaint, (Dkt. #18), as moot.

### B. The Motion for Leave to File Plaintiff's Third Amended Complaint

In response to EFD Sports's second motion for leave, (Dkt. #28), Bally's argues that the proposed TAC is futile because it fails to correct defects and it "seeks to add

8

parties over which the Court has no personal jurisdiction and against whom no claim is stated." (Dkt. #29 at 1). Consequently, the Court will focus on personal jurisdiction here without evaluating the merits of the claims or possible defects, as an amendment that fails to establish a prima facie case for personal jurisdiction would not survive a Rule 12(b)(2) motion to dismiss, and is therefore futile. *See Martinez*, 71 F.4th at 391 (if an amended complaint is subject to dismissal, it is futile); *Weisskopf v. United Jewish Appeal-Fed'n of Jewish Philanthropies of New York, Inc.*, 889 F.Supp.2d 912, 926 (S.D. Tex. 2012) (holding that "[p]laintiff's Proposed Amendment would be futile because it fails to make out a prima facie case for either specific or general personal jurisdiction over [defendant]"); *Papa Berg, Inc. v. World Wrestling Ent., Inc.*, No. 3:12-CV-2406-B, 2013 WL 6159296, at *8 (N.D. Tex. Nov. 25, 2013) (concluding "that [p]laintiffs have failed to establish a prima facie case of [party's] minimum contacts with Texas," and thus finding that leave to re-plead would be futile).

When "a court denies leave to amend for futility of amendment alone," the Court's analysis "mimics that of a motion to dismiss." *Martinez*, 71 F.4th at 391 (citing *Ariyan*, 29 F.4th at 229); *see also Stenger v. Marriot Int'l Corp. Headquarters*, No. 1:15-CV-30, 2016 WL 223681, at *1 (S.D. Ohio Jan. 19, 2016) (using a Rule 12(b)(2) analysis when deciding if an amendment is futile); *Parato v. Maestro Health*, No. 8:23CV58, 2025 WL 2402269, at *4 (D. Neb. Aug. 19, 2025) (using the Rule 12(b)(2) analysis for futility). To survive a Rule 12(b)(2) motion, a plaintiff has the burden to establish a prima facie case of personal jurisdiction. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 238 (5th Cir. 2008); *Conn Appliances, Inc. v.*

9

*Williams,* 936 F.3d 345, 347 (5th Cir. 2019). EFD Sports has not established a prima facie case for personal jurisdiction over the Individual Defendants, which is required to survive a motion to dismiss, and therefore, the proposed TAC is futile.

A federal court may assert personal jurisdiction over a defendant if the state long-arm statute permits jurisdiction, and if the exercise of jurisdiction would not violate due process. *Conn Appliances, Inc.*, 936 F.3d at 347. Because the Texas long-arm statute stretches to the constitutional maximum, "the two-step inquiry reduces to only the federal due process analysis." *Id.* (cleaned up). All that is required to establish a prima facie case then is to show that the defendant had "minimum contacts" with Texas, "meaning that he purposely availed himself of Texas's benefits and protections," and that exercising jurisdiction will not "offend traditional notions of fair play and substantial justice." *Id.* (cleaned up).

Minimum contacts can "give rise" to either general jurisdiction—when defendant's contacts are "continuous and systematic", so that they render the defendant essentially at home in the state—or specific jurisdiction, which exists when a defendant's contacts are directed toward the forum state and directly related to the cause of action. *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021). If the plaintiff establishes that there is specific jurisdiction by showing that the causes of action arise from the defendant's purposefully directed contacts with the forum state, then the burden shifts to the defendant to prove that maintaining a lawsuit in the forum state would be either "unfair" or "unreasonable." *Id.*

General jurisdiction is not at issue here, as none of the individual defendants is a resident of Texas, and EFD Sports does not allege any additional facts that would suggest the Individual Defendants have "continuous and systematic" contacts sufficient to render them essentially at home in the state.[2] *See id.* Thus, only specific jurisdiction over the Individual Defendants is in question.

### i.    Purposeful Availment

To establish minimum contacts with the forum state, there must be some "deliberate" act by the "defendant *himself*" which purposefully avails him of the privilege of conducting activities within the forum state, and which creates a "substantial connection" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (cleaned up). Even a single contact can support personal jurisdiction over a defendant, but only where that contact was purposefully targeted toward the forum state. *Id.* at 475. When the defendant's actions were not specifically targeted toward the forum state and his only contacts with the forum state were "random, fortuitous, or attenuated," the court lacks personal jurisdiction over the defendant. *Id.* (cleaned up). The defendant does not need to physically enter the state to establish a substantial connection with it. *Id.* at 476. Communicative contacts, including, for example, a single phone call, can be enough for personal jurisdiction if the communication "suggests that the nonresident

---

[2] Sam and Sina are residents of Palo Alto, California. (Dkt. #28 ¶¶ 1.3, 1.4). The TAC alleges that Dhandhania is also a resident of Palo Alto, California, but gives an address for him in Massachusetts; either way, he is also not a Texas resident. (Dkt. #28 ¶ 1.5).

defendant purposefully availed himself of the benefits of the [forum] state." *Brown v. Flowers Indus.*, 688 F.2d 328, 332–33 (5th Cir. 1982).

Personal jurisdiction may be based on intentionally tortious conduct, but that conduct must be purposefully directed toward the forum state. *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 383 (5th Cir. 2003). Where intentional torts stem from communications directed toward a party in a state, and where the effect of an intentional tort is felt in that state, there are still insufficient contacts with the state if the defendant does not have "a physical presence in the state, did not conduct business in the state, and the contract underlying the business transaction was not signed in the state and did not call for performance in the state." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 103 (5th Cir. 2018). Mere "injury to a forum resident is not a sufficient connection to the forum." *Id.* (citing *Walden v. Fiore*, 571 U.S. 277, 290, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014)). The contacts must "be analyzed with regard to the defendant's contacts with the forum itself, not with persons residing there," and the "plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 277 (citing *Calder v. Jones*, 465 U.S. 783, 788–789, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

Here, EFD Sports does not allege any deliberate acts performed by the Individual Defendants that would create a substantial connection with Texas. The Individual Defendants did not visit Texas, they did not target their actions towards Texas, and they did not purposefully avail themselves of the privilege of conducting

12

business in Texas. According to the TAC, it was Kim, not any of the Individual Defendants, who contacted Elliot via LinkedIn to inquire about StrikeTec. (Dkt. #28 ¶ 3.4). It was also Kim who led the project, who agreed to the budget, who initially discussed the scope of work with Elliot, and who made most representations about the project. (Dkt. #28 ¶ 3.4–3.42). Kim also had ultimate control over the project, and he was responsible for terminating it. (Dkt. #28 ¶ 3.42). Meetings and communications between the Individual Defendants and EFD Sports occurred over phone call, Zoom, or email, but the Individual Defendants merely "participated" in these calls because they were assigned to the project by Kim—they did not lead these communications, or initiate the project. (Dkt. #28 ¶ 4.19). EFD Sports's own allegations make this point apparent: Dhandhania and Sina "sent emails, participated in phone calls, and Zoom meetings wherein representations and promises were made *by Soo Kim*." (Dkt. #28 ¶ 4.19) (emphasis added). The Individual Defendants *themselves* did not deliberately conduct any activities within Texas, or that were targeted towards Texas.

While even a single phone call could constitute a minimum contact where it is purposefully directed at the forum state, the few communications between EFD Sports and the Individual Defendants were not purposefully directed at Texas; they were merely fortuitous. *See Burger King*, 471 U.S. at 475-476; *Brown*, 688 F.2d at 332–33; *Sangha*, 882 F.3d at 103. It is not clear from the TAC where performance of the alleged contract was being completed, or where the completed project would be used or marketed. Given that the project was to be used in "sports betting," which is

illegal in Texas, that the proof of concept of the project took place in California, and that at least some of the performance was intended to occur outside of Texas, there is nothing in the TAC to suggest that the Individual Defendants had a substantial or meaningful connection to the forum state, besides the fact that EFD Sports happens to be a Texas company. (Dkt. #28 ¶¶ 3.5, 3.11). The Individual Defendants communicated with Elliot, but the existence of contacts between the Individual Defendants and a *resident* of Texas is not proof of the existence of substantial or meaningful connection between the Individual Defendants and Texas itself. *See Walden*, 571 U.S. at 277, 290. It is only because Elliot is a Texas resident that the Individual Defendants have any contact at all with Texas, and the Court cannot exercise personal jurisdiction if the Defendants' only connection to the forum state is through the Plaintiff. *See id.*

EFD Sports further alleges that the Individual Defendants interfered with its relationship to another company, EntroBox, but this contact is also insufficient to support a prima facie case of personal jurisdiction. (Dkt. #28 ¶¶ 3.8, 4.21, 5.8). Interfering in a business relationship with another Texas entity may constitute tortious conduct targeted at the forum state, *see Cent. Freight Lines*, 322 F.3d at 384, but the TAC does not specify whether the company is a Texas entity, and contains no other allegations indicating a purposeful connection between the Individual Defendants and Texas. (Dkt. #28 ¶¶ 3.8–3.10).

The TAC also alleges that Sam contacted EFD Sports regarding employment. This conduct may show that Sam purposefully availed himself of the privilege of doing

14

business in Texas, as he sought employment with a Texas company; however, the TAC fails to allege how the claims in this case arise from that contact. (Dkt. #28 ¶¶ 3.18, 5.3); *see Admar Int'l, Inc.*, 18 F.4th at 786 (plaintiff must demonstrate that the causes of action asserted against the defendant arise from the defendant's contacts with the forum state). And the TAC fails to allege any specific acts of either of the other two Individual Defendants that suggest they purposefully made a substantial connection with Texas. Therefore, EFD Sports has failed to sufficiently establish a prima facie case of personal jurisdiction.

### ii.   Contracting with a Resident

In addition to the reasons already provided, the Individual Defendants' alleged contacts with EFD Sports are insufficient to establish a prima facie case of personal jurisdiction because the contacts and communications were all regarding a contract. The Fifth Circuit has held that "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (cleaned up). The existence of a contract, communicating about a contract, or mailing payments pursuant to a contract are all insufficient to establish "the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant." *VeroBlue Farms USA, Inc. v. Wulf*, 465 F.Supp.3d 633, 672 (N.D. Tex. 2020) (quoting *Freudensprung*, 379 F.3d at 344).

Personal jurisdiction "may be based on intentionally tortious conduct that is purposefully directed toward the forum state," but "mere allegations of tortious

15

interference with a forum resident's contractual rights" are insufficient to establish personal jurisdiction. *Cent. Freight Lines Inc.*, 322 F.3d at 383. And where tortious interference claims involve a contract with "financing agreements not governed by Texas law," or which is "not to be performed in Texas, and unrelated to Texas other than the fortuity that [parties] reside in Texas," those contacts are insufficient to establish personal jurisdiction. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868–70 (5th Cir. 2001). Of course, where "every action of which [Plaintiff] complains occurred in a State other than Texas, save and except [Defendant's] entry into the contract," there is no specific jurisdiction. *Bluestone Partners, LLC v. Lifecycle Constr. Servs., LLC*, 642 F.Supp.3d 560, 566 (E.D. Tex. 2022) (citing *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 497 (5th Cir. 2022)). Further, where material performance, negotiations, and preparation of documents related to the contract occurred in a state other than the forum state, or in other words, where "[it] cannot be said that the activities of the parties to [the] action were centered on Texas," the Court lacks jurisdiction over the defendant. *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985).

Here, the only contacts at issue are communications regarding the alleged contract between Bally's and EFD Sports. As to the Individual Defendants, such communications center on drafting and negotiating the contemplated licensing agreement. (Dkt. #28 ¶¶ 3.27–3.42). In the TAC the Individual Defendants are accused of tortious interference with the contract between EFD Sports and Bally's, (Dkt. #28 ¶¶ 5.1–5.6), but beyond communications concerning the licensing

16

agreement there are no other specific allegations of tortious conduct, and EFD Sports has otherwise "failed to allege or show that [Defendants'] alleged tortious conduct meaningfully connects [them] to Texas." *See Elevacity U.S., LLC v. Schweda*, No. 4:22-CV-00042, 2022 WL 3704537, at \*7 (E.D. Tex. Aug. 26, 2022). In this regard, and as the Court has explained, the communications complained-of by EFD Sports are unrelated to Texas, other than the fortuity that the Individual Defendants were negotiating a contract with a Texas resident, which is insufficient to establish specific jurisdiction. *See VeroBlue Farms*, 465 F.Supp.3d at 672. None of the alleged tortious actions referenced by EFD Sports occurred in Texas. *See Bluestone Partners, LLC*, 642 F.Supp.3d at 566. Negotiations, the proof of concept, communications, and the preparation of the licensing agreement, as well as at least some performance, all occurred outside Texas. Put simply, Texas was not the focus or center of the parties' activities. *See Patterson*, 764 F.2d at 1147. There is nothing pleaded in the TAC to suggest that the contract would be governed by Texas law, performed in Texas, or otherwise related to Texas. *See Panda Brandywine Corp.*, 253 F.3d at 868–70. Therefore, the proposed TAC does not plead sufficient minimum contacts to support a prima facie case of personal jurisdiction over the Individual Defendants.

## IV. CONCLUSION

For the foregoing reasons, EFD Sports's Third Amended Complaint would not survive a Rule 12(b)(2) motion to dismiss and the proposed amendment to its operative complaint would be futile.

17

It is therefore **ORDERED** that Plaintiff's Motion for Leave to File Plaintiff's Third Amendment Complaint, (Dkt. #28), is **DENIED**.

It is further **ORDERED** that Plaintiff's Motion for Leave to File Plaintiff's Second Amended Complaint, (Dkt. #18), is **DENIED as moot**.

It is further **ORDERED** that Plaintiff's Supplemental Motion for Leave to File Plaintiff's Third Amended Complaint, (Dkt. #56), is **STRICKEN**.

**So ORDERED and SIGNED this 15th day of May, 2026.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

18